IN THE UNITED STATES DISTRICT COURT
                FOR THE MIDDLE DISTRICT OF GEORGIA
                        COLUMBUS DIVISION

NEYSHA DELGADO,                    *

        Plaintiff,                 *

vs.                                *        CASE NO. 4:24-CV-82 (CDL)

APPLE GEORGIA, LLC, *et al.*,      *

        Defendants.                *

_____

                          O R D E R

    Neysha Delgado worked at an Applebee's restaurant in
Columbus, Georgia.  She alleges that her supervisors sexually
harassed her and that she was discriminated against because of her
gender, in violation of Title VII of the Civil Rights Act of 1964.
Delgado also asserts that Defendants negligently retained and
supervised her supervisors.  Delgado further claims that she was
not properly paid minimum wage or overtime wages, in violation of
the Fair Labor Standards Act.  Defendants filed a motion to dismiss
Delgado's Title VII claims and her state law negligent retention
and supervision claims.  As discussed below, the Court grants that
motion (ECF No. 19).  Defendants also filed a motion to compel
arbitration of Delgado's Fair Labor Standards Act claim against
Apple American Group II, LLC and to dismiss the Fair Labor
Standards Act claim against the other Defendants.  As discussed
below, the Court grants that motion (ECF No. 20) to the extent

that Delgado shall arbitrate her remaining claims against
Defendants. This action is stayed pending resolution of the
arbitration.

DISCUSSION

I. **Defendants' Motion to Dismiss the Title VII Claims**

Title VII of the Civil Rights Act of 1964 prohibits an
employer from discriminating against its employee because of her
sex. 42 U.S.C. § 2000e-2(a)(1). Unlawful sex discrimination
includes disparate treatment in the terms and conditions of
employment and creation of a hostile work environment based on
sex. Title VII also prohibits retaliation against an employee for
opposing sex discrimination. 42 U.S.C. § 2000e-3(a). Defendants
contend that Delgado's Title VII claims should be dismissed because
Delgado did not timely exhaust her administrative remedies.

Before filing a Title VII action in federal court, an employee
must exhaust her administrative remedies by filing a charge of
discrimination with the Equal Employment Opportunity Commission
("EEOC") "within one hundred and eighty days after the alleged
unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1);
*Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258 (11th Cir. 2003)
("Because Georgia is a non-deferral state, [the employee] was
required to file a Charge of Discrimination within 180 days of the
alleged unlawful employment action."). The 180-day clock runs
from the date of the alleged adverse employment action. Any claim

based on discrimination that occurred before the 180-day period is
barred.  Within ten days after a charge is filed, the EEOC must
send the employer a notice of the charge, then it must investigate.
42 U.S.C. § 2000e-5(b).  "The point of the time limitation is to
encourage a potential charging party to raise a discrimination
claim before it gets stale, for the sake of a reliable result and
a speedy end to any illegal practice that proves out." *Edelman v.
Lynchburg Coll.*, 535 U.S. 106, 112-13 (2002).

A.    Factual Background

There are no genuine factual disputes about Delgado's efforts
to exhaust her administrative remedies.  Delgado admits that she
did not file an official charge of discrimination until August 8,
2023, more than a year after she was terminated.  She asserts,
though, that she timely filed an inquiry via the EEOC's website on
July 22, 2022 and that her later Charge of Discrimination relates
back to that inquiry and should be considered timely.  On July 22,
2022, Delgado, who was not represented by counsel at the time,
filled out an inquiry form on the EEOC's website.  Mot. to Dismiss
Attach. 2, EEOC Inquiry 410-2022-07357, ECF No. 19-2.[1]  The inquiry
contains  Delgado's  full  name,  address,  email  address,  and

---

[1] In deciding a motion to dismiss, the Court may consider attachments to
the motion to dismiss that are central to the plaintiff's claims and are
not disputed. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).
Delgado agrees that the Court may consider the attachments to Defendants'
motion to dismiss, whose authenticity she does not challenge: her EEOC
Inquiry, an email response to her Inquiry, and the Charge of
Discrimination.

telephone number.     It also contains her employer's name ("Applebee") and address, as well as the name, email address, and telephone number of a "Senior Employment Counsel" for the employer. Delgado asserted that she had been subjected to unfair pay and scheduling because of her race and sex, that her manager implied that she would receive a promotion if she engaged in "personal inappropriate affairs," that her job was "at risk," and that she was retaliated against when she complained about discrimination. *Id.* at 2.  The inquiry listed Delgado as the "Potential Charging Party" and listed an "Approximate Deadline for Filing a Charge" as May 18, 2023.  *Id.* at 1-2.  It is not clear from the present record how the "Approximate Deadline" field was populated.

Delgado submitted the inquiry form via the EEOC's website. It was not signed or verified, and it did not indicate that Delgado affirmed under penalty of perjury that the information was truthful and correct.  The inquiry did not state that it was a charge, and it did not contain an affirmative statement that Delgado wanted to file a charge of discrimination or authorized the EEOC to investigate the alleged discrimination.  Delgado does not allege that anything on the EEOC's website suggested that submitting an online inquiry is the same as filing a charge of discrimination. She also does not assert that she attempted to schedule a required interview through the EEOC's website or via another method after she submitted her inquiry. On July 23, 2022, the day after Delgado

filed her inquiry, she learned that she had been terminated from her job at Applebee's.  Delgado does not allege that she filed anything else with the EEOC, received a response from the EEOC regarding her inquiry, or followed up with the EEOC regarding the next steps in the process within the 180 days following her termination.

On April 7, 2023—259 days after she submitted her online inquiry—Delgado received an email from an EEOC representative acknowledging receipt of the inquiry that she had filed the previous July.  Mot. to Dismiss Attach. 3, Email from S. Crank (Apr. 7, 2023), ECF No. 19-3.  The email stated that "submission of an inquiry does not constitute filing a charge of discrimination" and instructed Delgado to send an email to the EEOC if she wished to proceed with filing a charge.  *Id.*  Delgado sent an email to the EEOC that day, providing her inquiry number.  The EEOC construed the email as a request for an interview and responded that a representative would contact Delgado by telephone in two or three weeks to assist her.  On August 8, 2023, Delgado filed an official Charge of Discrimination with the EEOC against "Applebee" on Airport Thruway in Columbus, Georgia.  The EEOC did not send a "Notice of Charge of Discrimination" to any Defendant until August 9, 2023.

B.    Analysis

Delgado argues that under the EEOC's regulations, it is clear that her August 8, 2023 Charge of Discrimination relates back to her July 22, 2022 inquiry. A "charge" of discrimination "shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9; *accord* 42 U.S.C. § 2000e-5(b) ("Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires."). A "charge is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). "A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein." *Id.* Such amendments "will relate back to the date the charge was first received." *Id.* The relation-back provision ensures that a lay complainant "will not risk forfeiting his rights inadvertently" by failing to verify a charge, while also looking "out for the employer's interest by refusing to call for any response to an otherwise sufficient complaint until the verification has been supplied." *Edelman*, 535 U.S. at 115 (remanding for determination of whether an employee's unverified letter was a "charge" where the employee followed up on the letter by requesting and participating in an interview with an EEOC representative).

Here, Delgado contends that her online inquiry was a "charge" within the meaning of the regulations and that its only defect was lack of verification, which she could cure by amendment. The EEOC's Title VII regulations do not define the term "charge." The Title VII regulations do, however, distinguish between a "charge" and pre-charge "information" submitted to the agency. The EEOC permits a person to submit "information concerning alleged violations of title VII." 29 C.F.R. § 1601.6(a). "Where the *information* discloses that a person is entitled to file a *charge* with the [EEOC], the appropriate office shall render assistance in the filing of a *charge*." *Id.* (emphasis added). The Court understands that where an employee submits an unverified inquiry that contains all the required information and the EEOC *treats the inquiry as a charge and sends notice to the employer*, then that inquiry may be considered a "charge" that can be amended by a verified amended charge perfecting the original inquiry, and the amendment relates back to the date of the inquiry. *Wilcox v. Corr. Corp. of Am.*, 603 F. App'x 862, 864 (11th Cir. 2015) (per curiam). But the Court is not convinced that an unverified inquiry that the EEOC *does not treat as an official charge* is a "charge" that can be cured by an amendment that relates back to the unverified inquiry date under the circumstances here.

Even though Delgado's inquiry was not a "charge" within the meaning of the regulation permitting amendment and relation back,

it could be construed as a charge if the circumstances satisfy the Eleventh Circuit's "manifest intent" approach. That approach "requires a charging party to indicate clearly that she wishes to activate" notice to her employer and initiation of an EEOC investigation. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1319-20 (11th Cir. 2001); *see also Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) (approving of *Wilkerson's* "manifest intent" approach to the extent "it means the filing must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the [EEOC] to activate its machinery and remedial processes"). The "manifest-intent approach ensures that, once a charging party's intent is made clear, the EEOC's inaction will not vitiate her claim." *Wilkerson*, 270 F.3d at 1320.

Intake questionnaires, though, should not be treated "willy-nilly as charges." *Id.* There must be "some mechanism to separate information requests from enforcement requests." *Holowecki*, 552 U.S. at 401 (explaining that an intake questionnaire with "minimal information" like "an allegation of discrimination and the name of the employer" is not enough to be a "charge"). So, the circumstances must "convince a reasonable person" that the employee "manifested her intent to activate the machinery of Title VII by lodging [the] intake questionnaire with the EEOC." *Wilkerson*, 270 F.3d at 1320; *accord Holowecki*, 552 U.S. at 402.

Factors relevant to this inquiry include what the employee "and EEOC personnel said to each other, what the questionnaire form itself indicated, and how the EEOC responded to the completed questionnaire." *Wilkerson*, 270 F.3d at 1320. The "manifest intent" test is objective; the question is whether the filing may be "reasonably construed as a request for the [EEOC] to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Holowecki*, 552 U.S. at 402, 405 (finding, in an Age Discrimination in Employment Act case, that an intake questionnaire accompanied by a detailed affidavit and a specific request for the EEOC to "force [the employer] to end their age discrimination plan" could be construed as a charge).

In *Wilkerson*, for example, the employee contacted the EEOC to complain about her termination.  The EEOC mailed her an intake questionnaire, which contained several indications from which the "filing party could easily construe the questionnaire as a charge." 270 F.3d at 1321.  The employee promptly completed all the information on the questionnaire, provided a seven-page narrative about the events, signed her name affirming under penalty of perjury that the information she provided was true, and mailed the questionnaire to the EEOC.  When she did not hear back from the EEOC within a month, the employee contacted the EEOC, and a representative told her that there were a lot of people in front

of her and she needed to wait her turn. The employee waited several months, then contacted the EEOC again. At that time, the EEOC representative told the employee that the EEOC would treat the questionnaire as an official charge. Based on all these circumstances, the "manifest intent" standard was satisfied.

Here, in contrast, Delgado asserts that she submitted an online inquiry to the EEOC, but she does not allege that she did anything else until she received an email from the EEOC more than eight months later. There is no allegation that Delgado's inquiry explicitly asked the EEOC to take action, nor is there an allegation that Delgado attempted to follow up with the EEOC during the 180 days after she submitted the inquiry. There is also no suggestion that the inquiry form itself or the EEOC's website contained misleading indications which would have permitted Delgado to construe the inquiry form as an official charge. Finally, there is no contention that the EEOC treated the inquiry as an official charge. The Court is not convinced that these circumstances indicate that Delgado manifested an intent to activate Title VII's machinery when she submitted her online inquiry. And, Delgado did not point to any binding authority finding that simply submitting an online inquiry form, without more, indicates a "manifest intent" to file a charge under the circumstances presented here. For these reasons, the Court finds that the July 2022 inquiry should not be treated as a Charge of

Discrimination.  Delgado did not file her Charge of Discrimination until more than a year after her termination, so her charge was untimely and her Title VII claims are dismissed for failure to exhaust administrative remedies.

## II. Defendants' Motion to Dismiss the State Law Claims

In addition to her Title VII claims, Delgado asserts a claim against Defendants for negligent retention and supervision of M.I. and J.O., the two managers who allegedly subjected her to sexual harassment.[2]  Defendants argue that Delgado did not allege enough facts to support negligent retention and supervision claims.  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims.  *Id.* at 556.

---

[2] Delgado summarily alleges that all the Defendants were her joint employers.  Defendants contend that Delgado was employed by Apple American Group LLC and that no other Defendant was her employer.  Because the Court concludes that Delgado did not allege enough facts to support her negligent retention and supervision claims, the Court finds it unnecessary to decide whether Delgado alleged sufficient facts to establish that each Defendant was her employer.

A Georgia employer may be liable for its failure to exercise due care in retaining or supervising an employee who commits a tort, including sexual harassment giving rise to an actionable claim, "if the employer, in the exercise of reasonable care, should have known of an employee's reputation for sexual harassment and that it was foreseeable that the employee would engage in sexual harassment of a fellow employee but he was continued in his employment." *B.C.B. Co. v. Troutman*, 409 S.E.2d 218, 220 (Ga. Ct. App. 1991) (quoting *Coleman v. Hous. Auth. of Americus*, 381 S.E.2d 303, 307 (Ga. Ct. App. 1989)).[3]    In *Troutman*, for example, the plaintiff's supervisor repeatedly subjected her to unwelcome, invasive physical touching and threatened her job if she did not go to a motel with him.    She asserted that such conduct was foreseeable because the employer knew that the supervisor had previously engaged in very similar conduct with another employee, but the employer retained the supervisor and transferred the other

---

[3] Delgado appears to allege that the tort underlying her state law negligent retention/supervision claims is "sexual harassment."    The parties did not address the elements of a sexual harassment claim under Georgia law.    Georgia courts generally treat sexual harassment as a type of emotional distress claim.    *See, e.g.*, *Travis Pruitt & Assocs., P.C. v. Hooper*, 625 S.E.2d 445, 450 (Ga. Ct. App. 2005) (suggesting that sexual harassment could give rise to a claim for intentional infliction of emotional distress against the harasser and that a negligent retention claim against the employer based on the harasser's conduct is a negligence claim for emotional distress damages that must be supported by physical injury or pecuniary loss).    The Court assumes that quid pro quo harassment, such as Delgado's allegation that M.I. would not promote her unless she had sex with him, would be actionable as a sexual harassment claim under Georgia law.

employee to a position away from him. 409 S.E.2d at 219-20. Similarly, in *Favors v. Alco Mfg. Co.*, the shop foreman who regularly demanded sexual favors from the plaintiff and "grabbed and squeezed her private areas in a lewd manner" had a reputation for sexual harassment that was known and foreseeable by the employer because the foreman "frequently and openly" harassed the plaintiff and other women in the presence of other employees, including supervisors. 367 S.E.2d 328, 329, 331 (Ga. Ct. App. 1988).

Here, Delgado alleges that during her six months at Applebee's, J.O. made two inappropriate sexual comments to her, regularly used offensive words in her presence to describe women, and expressed to her his belief that women should not make more money than men. Am. Compl. ¶¶ 35-40, ECF No. 7. She also asserts that M.I. rubbed her shoulders three or four times, told her she would be promoted faster if she had sex with him, and did not correct the payroll system to ensure that she received the higher pay she was due when she worked as a team lead instead of a regular crew member. *Id.* ¶¶ 41-45, 47-49. Delgado also alleges that M.I. had a sexual relationship with a female assistant manager, that M.I. bragged about the relationship in her presence, that M.I. implied to Delgado that the female assistant manager received a promotion because of the relationship, and that M.I. and the female assistant manager "made out" at work several times in her presence.

13

*Id.* ¶¶ 43-46.  Finally, Delgado alleges that when she contacted a human resources representative in June 2022, she made several complaints about her pay and also "cited 'sexual harassment, sanitary concerns, and complaints about the managers'" but "did not feel comfortable enough to report the details of the harassment," and the harassment continued.  *Id.* ¶¶ 60-66.

Delgado summarily alleges that Defendants "were or should have been aware of the sexual harassment" by J.O. and M.I. and that Defendants "knew, constructively knew, or in the exercise of reasonable care should have known, of their prior history of, reputation for, and propensity for, sexual harassment directed toward" her.  *Id.* ¶¶ 191, 195.  These allegations "are not based on any specifically pled facts." *Novare Grp., Inc. v. Sarif*, 718 S.E.2d 304, 310 (Ga. 2011) (finding that a negligent supervision claim failed where the plaintiff's "knew or should have known" assertion was not supported by factual allegations to support it).

Delgado does allege that she mentioned sexual harassment when she called a human resources representative to complain about the restaurant's pay practices, but she also alleges that she did not share any details about the alleged harassment.  These allegations do not give rise to an inference that Delgado's employer knew or should have known that J.O. and M.I. engaged in the conduct she now alleges.  Delgado also did not point to any factual allegations which suggest that her employer had knowledge or a reason to know

about any conduct by J.O. that would put the employer on notice of a prior history of, reputation for, or propensity for sexual harassment.  Regarding M.I., Delgado alleges that he bragged to others at the restaurant about his relationship with a female assistant manager, made out with the female assistant manager in the presence of Delgado and other subordinates, and suggested to Delgado that the female assistant manager received a promotion because of her relationship with M.I.  While these allegations support the inference that Delgado and some of her coworkers at the restaurant knew about M.I.'s relationship with a female assistant manager, they do not support the inference that M.I.'s *supervisors* had this information or any reason to know that M.I. tried to coerce female employees into sexual relationships by promising them promotions.  For these reasons, the Court finds that Delgado did not adequately allege that any Defendant knew or reasonably should have known that J.O. or M.I. had a propensity to engage in sexual harassment, so her negligent retention and negligent supervision claims are dismissed.

**III. Defendants' Motion Regarding the FLSA Claims**

Delgado's remaining claims are under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").  Delgado alleges that her employer did not pay her for all the hours she worked and did not pay her the correct amount of overtime for all her hours in excess of forty hours per week.  Delgado acknowledges that she signed an

arbitration agreement as part of a Dispute Resolution Program between her and "Apple American Group LLC and all subsidiaries or affiliated entities." Defs.' Mot. to Compel Arbitration Attach. 3, Dispute Resolution Program Booklet 1, ECF No. 20-3 at 118. Under that agreement, Delgado agreed that all "claims for wages or other compensation" against Apple American Group LLC and its affiliated entities would be subject to arbitration. *Id.* at 3, ECF No. 20-3 at 120. Delgado contends, though, that she cannot be compelled to arbitrate her FLSA claims against Defendants under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, *codified at* 9 U.S.C. §§ 401-402 ("EFAA").

The EFAA's purpose is to empower sexual harassment claimants to pursue their claims in a judicial forum instead of arbitration. H.R. Rep. 117-234, at 3-4 (2022). Under the EFAA, an arbitration agreement shall not be "valid or enforceable with respect to a case which is filed under Federal . . . or State law and relates to [a] sexual assault dispute or [a] sexual harassment dispute." 9 U.S.C. § 402(a). A "sexual harassment dispute" is "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable . . . law." 9 U.S.C. § 401(4). Thus, a case that includes a *viable* Title VII sexual harassment claim or state law claim negligent retention/supervision claim based on sexual harassment would be a "sexual harassment dispute" within the meaning of the EFAA. But nothing in the EFAA requires continued

16

litigation in court of a case where all the sexual harassment claims have been dismissed for failure to exhaust administrative remedies or failure to state a claim, and nothing in the EFAA suggests that Congress intended to override the Federal Arbitration Act in cases with no viable sexual harassment (or sexual assault) claim. The EFAA's purpose would not be served by requiring non-sexual harassment claims to be litigated in court despite a binding arbitration agreement, and the Federal Arbitration Act's liberal federal policy favoring arbitration would not be met by voiding arbitration agreements in cases where there are no remaining sexual harassment claims.

Here, Delgado's Title VII and state law negligent retention/supervision claims have been dismissed and are no longer in the case. The only remaining claims are Delgado's FLSA claims that Defendants did not pay Delgado for all the hours she worked and did not pay her overtime at the proper rate. Delgado contends that her FLSA claims are inextricably intertwined with her now-dismissed sexual harassment claims because she alleges that M.I. made some of the improper payroll decisions because of Delgado's sex. But as Delgado appears to recognize in her FLSA Counts (Count V and Count VI), discriminatory intent based on sex is not an element of Delgado's FLSA claims. The success of her FLSA claims does not depend on proving that M.I.'s payroll decisions were part of a sexual harassment campaign. Rather, the FLSA claims depend

17

on proof that Defendants did not pay Delgado minimum wage for some of her time and that Defendants did not pay Delgado the correct amount of overtime. Her claim that Defendants willfully violated the FLSA depends on proof that Defendants knew or showed reckless disregard for whether their payroll conduct violated the FLSA. Accordingly, the Court finds that the remaining FLSA claims do not relate to a sexual harassment dispute, so the EFAA does not bar arbitration of those claims.

For the reasons set forth above, the Court grants Defendants' motion to compel arbitration of Delgado's remaining FLSA claims. The Court declines to dismiss Delgado's claims against the Defendants other than Apple American Group LLC. The arbitration agreement contemplates arbitration of all claims against Apple American Group LLC and its affiliated entities, and the arbitrator may decide whether any of the affiliated entities were Delgado's "employer" within the meaning of the FLSA.

CONCLUSION

As discussed above, the Court grants Defendants' motion to dismiss Delgado's Title VII claims and her state law negligent retention/negligent supervision claims (ECF No. 19). The Court also grants Defendants' motion to compel (ECF No. 20) to the extent that Delgado shall arbitrate her FLSA claims against Defendants. The Court hereby stays this action pending resolution of the arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024)

("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

IT IS SO ORDERED, this 5th day of December, 2024.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA